UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|                                      |                        |
|--------------------------------------|------------------------|
| UNITED STATES of AMERICAN,           |                        |
|           Plaintiff,                 |                        |
| v.                                   | Case No. 12-CR-145-JPS |
| ARTEMIO MARIN-SANCHEZ, JR.,          |                        |
|           Defendant.                 | ORDER                  |

On July 17, 2012, the defendant, Artemio Marin-Sanchez, Jr., was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Docket #1). He filed an evidentiary motion on September 13, 2012, seeking to suppress the handgun found in his car during a traffic stop. (Docket #13). Magistrate Judge Patricia J. Gorence held an evidentiary hearing on that motion, and subsequently issued a Report and Recommendation that the motion be denied. (Docket #17, #20). Mr. Marin-Sanchez filed objections to Magistrate Gorence's Report and Recommendation. (Docket #21). The Court now addresses the Report and Recommendation, as well as Mr. Marin-Sanchez's objections thereto, and the parties' earlier filed briefs on this matter. (Docket #18, #19, #20, #21).

1.   BACKGROUND

On May 21, 2012, Officer Richard Krueger, a four-year veteran of the City of Greenfield Police Department, was working alone in his squad car when he conducted a routine registration check on a passing vehicle. (Rept. and Rec. (Docket #20) at 2). The registration check showed Esteban Marin as the vehicle's owner. (Rept. and Rec. at 2). Officer Krueger had previously had

contact with Esteban Marin while arresting him for underage drinking, and believed Esteban Marin to be a gang member. (Rept. and Rec. at 2).

Accordingly, Officer Krueger began to follow the vehicle. (Rept. and Rec. at 2). While following the vehicle, Officer Krueger saw the driver make a motion that was "consistent with…trying to retrieve or conceal something from within the vehicle." (Rept. and Rec. at 2 (citing Tr. of Ev. Hearing at 9)). Officer Krueger then noticed that the driver was not wearing a seatbelt, and initiated a traffic stop on that basis. (Rept. and Rec. at 2 (citing Tr. of Ev. Hearing at 9)).

Upon pulling the vehicle over, at approximately 5:40 p.m., Officer Krueger approached the vehicle's passenger side. (Rept. and Rec. at 2–3). He found Mr. Marin-Sanchez (the defendant) and Mayra Sandoval in the car, with Mr. Marin-Sanchez in the driver's seat. (Rept. and Rec. at 3). Officer Krueger requested both individuals' identification, which they provided. (Rept. and Rec. at 3). Mr. Marin-Sanchez then informed Officer Krueger that the car belonged to his brother, Esteban Marin. (Rept. and Rec. at 3). During this time at the side of the vehicle—approximately 36 seconds in total—Officer Krueger noticed several tattoos on Mr. Marin-Sanchez, which Officer Krueger testified connote some gang significance. (Rept. and Rec. at 3 (citing Tr. of Ev. Hearing at 15, 16, 18)).

After this short 36-second time period at the side of the car, Officer Krueger returned to his squad car, at approximately 5:41 p.m. (Rept. and Rec. at 3). Once in his squad car, Officer Krueger requested record checks of Mr. Marin-Sanchez, Ms. Sandoval, and Mr. Marin-Sanchez's brother Esteban Marin (the registered owner of the car). (Rept. and Rec. at 3–4). Officer Krueger was notified that Mr. Marin-Sanchez's license was suspended, that

Ms. Sandoval had no prior record, and that Esteban Marin had previously been stopped on more than one occasion and was a suspected gang member. (Rept. and Rec. at 3–4 (citing Stipulated Facts, Government's Br. in Opp. (Docket #18) at 3)). It is unclear from the record how long it took for Officer Krueger to receive the information on the defendant's and his passenger's records.

What is clear is that at 5:49 p.m., approximately 8 minutes after the initial traffic stop, another officer—Officer Eric Lindstrom—arrived on the scene. (Rept. and Rec. at 4). Officer Krueger had not called for backup at any point while awaiting the results of his requested record check, but Officer Lindstrom stopped by as a matter of standard practice for police officers to move toward the location of a traffic stop upon hearing one occur. (Rept. and Rec. at 4 (citing Tr. of Ev. Hearing at 60)).

Upon Officer Lindstrom's arrival, both officers approached the vehicle. (Rept. and Rec. at 4). At that time, Officer Krueger asked Mr. Marin-Sanchez to exit the vehicle; Mr. Marin-Sanchez did so and answered "No" when asked if he was carrying any weapon. (Rept. and Rec. at 4 (citing Stipulated Facts, Government's Br. in Opp. at 3)). Officer Krueger then performed a pat down search of Mr. Marin-Sanchez after receiving Mr. Marin-Sanchez's consent to do so. (Rept. and Rec. at 4). During the search, Officer Krueger found a small amount of marijuana in the defendant's pocket. (Rept. and Rec. at 4).

Officer Krueger then placed Mr. Marin-Sanchez under arrest for possession of marijuana, and further issued him citations for failure to wear a seatbelt and operation of a vehicle with a suspended license. (Rept. and

Rec. at 4). Officer Krueger placed Mr. Marin-Sanchez in custody in the back of his squad car. (Rept. and Rec. at 4).

A subsequent search of the vehicle revealed a semi-automatic handgun and an additional amount of marijuana. (Rept. and Rec. at 4).

Mr. Marin-Sanchez filed a motion to suppress that gun. (Docket #13). Magistrate Gorence held a hearing and received briefs from the parties on that motion. (Docket #17, #18, #19). Magistrate Gorence then issued the Report and Recommendation now before the Court, in which she recommended that the Court deny Mr. Marin-Sanchez's motion. (Docket #20).

2.  DISCUSSION

Mr. Marin-Sanchez argues that Officer Krueger's stop was unreasonable and, therefore, illegal. (*See, e.g.*, Def.'s Objections (Docket #21) at 3). It is unclear from Mr. Marin-Sanchez's submission which part of the stop, exactly, that he points to as being objectionable. Therefore, the Court will take each segment of the stop piece-by-piece.

In reality, the Court can identify five separate segments of the stop: (1) Officer Krueger's having pulled over Mr. Marin-Sanchez's vehicle; (2) Officer Krueger's 36-second discussion with Mr. Marin-Sanchez and Ms. Sandoval when standing beside the vehicle; (3) Officer Krueger's 8-minute holding of the car while performing a record check of the defendant; (4) Officer Krueger's having Mr. Marin-Sanchez step out of the car and the subsequent pat-down; and (5) the subsequent search of the vehicle that yielded the weapon in issue.

Generally, the detention of a driver during a traffic stop constitutes a "seizure" under the Fourth Amendment and, accordingly, its basis, nature,

and duration must be reasonable. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002). During a traffic stop, an officer may ask questions unrelated to the traffic stop, even if those questions extend the length of the traffic stop for a brief period of time. *Childs*, 277 F.3d at 952–54.

Under this state of the law, both the first and second segments of Officer Krueger's stop of Mr. Marin-Sanchez were reasonable and legal. To begin, Officer Krueger observed that Mr. Marin-Sanchez did not have his seat belt on and, accordingly, the first segment of the stop—his initial stop of the vehicle—was a legal stop for a traffic violation. Moreover, his short 36-second questioning of the vehicle's occupants was very limited in duration, and, accordingly, reasonable and legal, despite any questions he may have asked of the occupants. *See, e.g., Childs*, 277 F.3d at 952–54; *United States v. Taylor*, 596 F.3d 373, 376 (7th Cir. 2010).

The third part of the stop—the 8-minute delay during which Officer Krueger requested a check of Mr. Marin-Sanchez's records—presents a more difficult case. Officer Krueger testified that, during that period, he ran background checks on the owner and occupants of the car and then waited for backup despite not making an explicit request for dispatch of backup. (Tr. of Ev. Hearing at 47:5–49:3). He also testified that he wanted another officer to be present for his safety, due to his knowledge that the car was owned by a suspected gang member (Esteban Marin) and his general suspicion Mr. Marin-Sanchez was a gang member (gleaned from Mr. Marin-Sanchez's visible tattoos). (Tr. of Ev. Hearing 47:15–47:23). It is unclear exactly how long the background checks took Officer Krueger to complete, but it is likely

that there was some period during which Officer Krueger had completed the background checks and delayed wrapping up the stop while waiting for backup. (Tr. of Ev. Hearing at 42:5–43:12).

This 8-minute gap, the purpose of which is unclear, raises some doubt in the Court's mind as to whether it was reasonable. Nonetheless, under the Seventh Circuit's law, it seems that this small amount of additional time does not transform the stop into an illegal one.

Under *Childs*, the Seventh Circuit held that where probable cause supports a traffic stop, such traffic stop is not subject to the scope and duration limits of *Terry*. *Childs*, 277 F.3d at 952–53 (citing *Terry v. Ohio*, 392 U.S. 1 (1968); *Whren*, 517 U.S. 806). *See also United States v. McBride*, 635 F.3d 879, 882 (7th Cir. 2011). Where the stop is based on probable cause, such probable cause would also justify an arrest, and, therefore, a driver detained for probable cause has no right to expeditious release. *McBride*, 635 F.3d at 882 (citing *Childs*, 277 F.3d at 952). In such case, the Court need only ensure that the detaining officer's steps were reasonable, and that any extra time was not unreasonably spent. *Childs*, 277 F.3d at 953–54.

Here, as in *Childs* and *McBride*, the defendant was stopped for probable cause (his seatbelt violation), and, therefore, Mr. Marin-Sanchez "had [no] right to be released the instant the steps to check license, registration, and outstanding warrants and to write a ticket, had been completed." *Childs*, 277 F.3d at 953; *McBride*, 635 F.3d at 882. Here, so long as Officer Krueger acted reasonably in waiting for backup to arrive, the stop was not illegal. He spent most of the stop performing routine police work, such as running background checks and gathering information about the car;

Page 6 of 8

Case 2:12-cr-00145-JPS    Filed 12/20/12    Page 6 of 8    Document 24

any time not spent doing so was limited to no more than eight minutes. The fact that the officer's stop was of such a short period of time, standing alone, may be enough to make the stop reasonable. However, the Court's determination of reasonability is further supported by the fact that Officer Krueger had reason to believe that the defendant was a gang member and potentially posed a safety threat given an observed furtive gesture prior to the traffic stop. In fact, the parties stipulated that it was permissible for Officer Krueger to wait for backup. (Tr. of Ev. Hearing at 3:9–3:16). Officer Krueger waited a short time for backup to arrive, which it did promptly. He further testified that he was about to call backup at the moment that backup arrived (and his failure to immediately call for backup was reasonable, given his experience that another officer would immediately begin to respond to his location by virtue of his making the stop). Each of these actions is reasonable to ensure officer safety, and, therefore, the Court holds that this segment of the stop was legal.

      The fourth segment of the stop—the additional questions asked of Mr. Sanchez and his being asked to step out of the car—are also reasonable. Officers may ask additional questions of a detained driver, *Childs*, 277 F.3d at 952–53, and there is no evidence that Mr. Marin-Sanchez refused to exit the car. He even consented to a pat down. Those facts, coupled with the officers' having probable cause to believe that the defendant had violated the law—by this point, it was clear that the defendant had failed to wear his seatbelt and also that he was driving with a suspended license—make clear that Officer Krueger's further questions and pat-down of Mr. Marin-Sanchez were legal.

      Finally, as to the fifth segment of the stop—Mr. Marin-Sanchez's arrest and the search of his car—the Court finds that it, too, was legal and

reasonable. Officer Krueger had found marijuana on the defendant and, therefore, had reason to arrest Mr. Marin-Sanchez. The parties do not dispute that the later search of the vehicle was reasonable and legal. (Tr. of Ev. Hearing 4:24–5:1).

Given that the firearm in question was located in that search—and that the Court has determined that each preceding segment of the stop was appropriate—the Court is obliged to conclude that the entire stop was legal. Therefore, the Court is obliged to adopt Magistrate Gorence's Report and Recommendation (Docket #20), and likewise to deny Mr. Marin-Sanchez's motion to suppress the firearm (Docket #13).

Accordingly,

IT IS ORDERED that Magistrate Judge Patricia J. Gorence's Report and Recommendation to the Court (Docket #20) be and the same is hereby ADOPTED; and

IT IS FURTHER ORDERED that the defendant's Motion to Suppress Evidence (Docket #13) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 20th day of December, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge